WO        IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

THOMAS MYERS,                        )
                                     )
                                     )
                        Plaintiff,   )
                                     )
     vs.                             )
                                     )
ALEUTIAN ENDEAVORS, LLC, et al.,     )
                                     )    No. 3:18-cv-0033-HRH
                        Defendants.  )
                                     )
_____)

O R D E R

Motion for Cure for Life

Plaintiff moves for a declaration that he is entitled to cure for life.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

Facts

Plaintiff is Thomas Myers. Defendants are Aleutian Endeavors, LLC and Thomas Robinson.

---

[1]Docket No. 25.

[2]Docket No. 28.

-1-

Plaintiff alleges that in June of 2015, he was working as a "deckhand/cook/engineer" on the M/V EXITO when he "fell while running across the deck."[3] Plaintiff also alleges that he was injured in a separate incident when he was "struck in the back by a loose deck board."[4] As a result of these two incidents, plaintiff alleges that he "sustain[ed] severe, painful and disabling injuries to his low back [and] left hip and knee[.]"[5] Plaintiff contends that the injuries he suffered will "likely require medical attention for the remainder of his natural life."[6]

Plaintiff commenced this action on November 20, 2017. In his complaint, plaintiff seeks, among other things, maintenance and cure.

Plaintiff now moves for a declaration that he is entitled to cure for life for his permanent injuries.

## Discussion

"Under maritime law, . . . seamen [are] entitled to 'maintenance and cure' from the owners of their ships." Jones v. Reagan, 748 F.2d 1331, 1334 (9th Cir. 1984). "'Maintenance' is a living allowance that permits the seaman to obtain housing and food while he recovers[.]" Id. "[C]ure' is payment for medical care[.]" Id. "Irrespective of fault, the

---

[3]Seaman's Complaint [etc.] at 2, ¶¶ 5-7, Docket No. 1.

[4]Id. at ¶ 7.

[5]Id.

[6]Seaman's Motion for Cure for Life [etc.] at 3, Docket No. 25.

vessel owner is obliged to pay . . . maintenance and cure." Berg v. Fourth Shipmor Assocs., 82 F.3d 307, 309 (9th Cir. 1996).

In Farrell v. United States, 336 U.S. 511, 512 (1949), Farrell "was grievously injured" while in service of a merchant vessel. Farrell's injuries were permanent and as a result, he argued that he was "entitled to maintenance as long as he is disabled, which in this case is for life." Id. at 513. The Court rejected Farrell's argument and held that a vessel owner's obligation to pay maintenance ended when the seaman reaches maximum cure or recovery. Id. at 517-19. "The accepted legal standard holds that maximum cure is achieved when it appears probable that further treatment will result in no betterment of the seaman's condition." Pelotto v. L & N Towing Co., 604 F.2d 396, 400 (5th Cir. 1979).

Farrell did not argue that he was entitled to cure for life because at that time, seamen were entitled to free medical care at Marine Hospitals, which the federal government had begun operating in 1798. Jones, 748 F.2d at 1334. But, "[i]n 1981, Congress enacted the Omnibus Budget Reconciliation Act of 1981, . . . a comprehensive appropriations bill that adjusted the eligibility requirements and amounts budgeted for a large number of federal programs. Among its other provisions, the Budget Act ordered the closure" of the Marine Hospitals. Id.

Plaintiff argues that with the closure of the Marine Hospitals, the maintenance and cure doctrine reverted back to its status between the signing of the Constitution in 1787 and the establishment of the Marine Hospital system in 1798. And, plaintiff contends that

between 1787 and 1798, seamen were entitled to lifetime cure from shipowners. Plaintiff cites to Atlantic Sounding Co., Inc. v. Townsend, 557 U.S. 404 (2009), in support of this argument. The issue in Atlantic Sounding was "whether an injured seaman may recover punitive damages for his employer's willful failure to pay maintenance and cure." Id. at 407. The Court held that

> [b]ecause punitive damages have long been an accepted remedy under general maritime law, and because nothing in the Jones Act altered this understanding, such damages for the willful and wanton disregard of the maintenance and cure obligation should remain available in the appropriate case as a matter of general maritime law.

Id. at 424. Plaintiff does not explain what this holding has to do with seamen being entitled to cure for life between 1787 and 1798.

Plaintiff also cites to Jones, 748 F.2d 1331, in support of his argument that he is entitled to cure for life. There, "a class of merchant seamen who ha[d] been declared permanently not fit for duty because of physical ailments or injuries, challenge[d]" the closure of the Marine Hospitals. Id. at 1334. "The seamen contend[ed] that the termination of care violate[d] equal protection, due process, the separation of powers, contract law and equity." Id. One of the arguments raised by the seamen was that the closure of the Marine Hospitals left "them without a remedy against the shipowners because of laches." Id. at 1335. The Ninth Circuit determined that laches would not automatically bar the seamen from seeking cure from shipowners but because the application of laches "is heavily fact-dependent[, it] should be decided in individual suits against the owners." Id. at 1336.

The seamen also argued that "the government's provision of free [medical] care resulted in a novation of [their] original employment contracts, substituting the government as the party responsible for the seamen's continued care[.]" Id. at 1339. Because "[c]ourts traditionally have limited the seamen's recovery against the shipowners because of the free medical care available to seamen in the Public Health hospitals[,]" the seamen argued that the federal government had been substituted as "the primary provider of medical care under the employment contract." Id. at 1340. The Ninth Circuit rejected this argument, explaining that "because laches does not operate as a matter of law, the seamen first must seek relief from the shipowners." Id.

Plaintiff argues that Jones supports his argument that he is entitled to cure for life because the seamen in Jones had all been declared permanently not fit for duty, which, he contends, would mean that most, if not all of them, had reached maximum cure or recovery by the time the case was commenced. Yet, the Ninth Circuit determined that laches would not necessarily prevent the seamen from seeking cure from shipowners. Plaintiff argues that Jones thus provides tacit support for the contention that seamen who are permanently injured are entitled to cure for life.

Plaintiff contends that the only case contrary to his position that seamen who are permanently injured are entitled to cure for life is Whitman v. Miles, 294 F. Supp. 2d 117 (D. Me. 2003). There, the question presented was "how far maintenance and cure extend for a sailor diagnosed with multiple sclerosis, who wants continuing treatment." Id. at 119. The

court observed that maintenance and cure "lasts only until the sailor 'is so far cured as possible.'" Id. at 122 (quoting Farrell, 336 U.S. at 518). The parties disagreed as to whether Whitman had been diagnosed with a permanent condition and if she had been, when her doctor had determined that she had reached maximum cure. Id. Ultimately, the court "conclude[d] that Whitman was undisputedly diagnosed with a permanent condition and that her doctor described her as having reached maximum cure by August 15, 2000. On that date, Miles's obligation to provide maintenance and cure ended." Id. at 124.

Plaintiff argues that Whitman is not persuasive authority because the court did not treat maintenance and cure as separate entitlements, which plaintiff insists they are. In support of his contention that maintenance and cure are separate entitlements, plaintiff cites to Pelotto, 604 F.2d 396.

While there is no dispute that maintenance and cure are two separate remedies available to seamen injured while in service to a vessel, Pelotto does not help plaintiff because the court stated that both maintenance and cure are provided only to "the point of 'maximum cure.'" Id. at 400. And, as defendants point out, there are innumerable cases in which courts have made similar observations. See, e.g., Gardiner v. Sea-Land Service, Inc., 786 F.2d 943, 946 (9th Cir. 1986) (citation omitted) ("[t]he right to maintenance is tied to the right to cure, i.e., necessary medical services, and both extend to the point of maximum recovery"); Springborn v. Amer. Commercial Barge Lines, Inc., 767 F.2d 89, 95 (5th Cir. 1985) ("[t]he cut-off date for both maintenance and cure is . . . the date of maximum possible

cure"); Dean v. Fishing Co. of Alaska, Inc., 300 P.3d 815, 819 (Wash. 2013) (citation omitted) ("[t]he shipowner's duty to pay maintenance and cure continues until the seaman . . . reaches the point of maximum medical recovery"). This is presumably because "[m]aintenance and cure was not intended as a pension or disability plan." Norfolk Dredging Co. v. Wiley, 450 F. Supp. 2d 620, 626 (E.D. Va. 2006) (citing Farrell, 336 U.S. at 519).

Nothing in Jones is to the contrary. While the Ninth Circuit did hold that laches would not automatically bar the seamen from seeking on-going cure from shipowners, the court did not hold that the seamen were entitled to cure for life. And even if Jones could be read as providing tacit support for the concept of cure for life, as plaintiff suggests, in a later case, the Ninth Circuit plainly stated that "any right to maintenance is tied to the right to cure, i.e., necessary medical services, and both extend to the point of maximum recovery." Gardiner, 786 F.2d at 946 (citation omitted) (emphasis added). In light of this plain statement, plaintiff's argument that he is entitled to cure for life because of his alleged permanent injuries must be rejected.

But even if the court were to determine that seamen who were permanently injured were entitled to cure for life, plaintiff's motion would still be denied because plaintiff has not shown that he is permanently injured. Plaintiff has not offered any evidence of his current condition nor any evidence that he will require on-going medical treatment. Moreover, defendants offer evidence that plaintiff was "cleared to return to work in the fishing industry

in Alaska" on May 18, 2017[7] and evidence that plaintiff worked on fishing boats in December 2016 and January 2017.[8] This evidence suggests that plaintiff has not been declared permanently unfit for duty. It also suggests that he has reached his maximum recovery in terms of the alleged injuries he suffered while in service to the M/V EXITO.

Conclusion

Plaintiff's motion for cure for life[9] is denied.

DATED at Anchorage, Alaska, this 22nd day of May, 2018.

/s/ H. Russel Holland
United States District Judge

---

[7]Jefferson Healthcare After Visit Summary at 1, Exhibit 1, Declaration of Thomas G. Waller [etc.], Docket No. 29.

[8]Exhibit 2 at 1, Waller Declaration, Docket No. 29.

[9]Docket No. 25.